UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

ALAMEDA COUNTY ELECTRICAL INDUSTRY SERVICE CORPORATION a California corporation, et al.,

Plaintiffs,

v.

RONALD WALTER STUWARD d/b/a DIGITAL ELECTRONIC ENTERPRISES, and DOES ONE through TEN, inclusive

Defendants.

No. C 11-05676 LB

**ORDER DENYING WITHOUT PREJUDICE MOTION FOR DEFAULT JUDGMENT**

[Re: ECF No. 30]

## INTRODUCTION

Plaintiffs are employee benefits plans for electrical workers and other covered employees in the electrical services industry, and the trustees of those plans. Complaint, ECF No. 1, ¶ 1.[1] They sued Ronald Walter Stuward, doing business as Digital Electric Enterprises ("Defendant"), for failing to pay employee fringe benefits in violation of the parties' Collective Bargaining Agreement (known as the Alameda County Inside Construction Agreement Between Alameda County Branch, Northern California Chapter, National Electrical Contractors Association (hereafter, the "CBA")), the trust agreement establishing the benefit plans, and the Employee Retirement Income Security Act

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page numbers at the top of the document.

UNITED STATES DISTRICT COURT
For the Northern District of California

("ERISA"), Pub. L. No. 93-406 (codified in part at 29 U.S.C. § 1002 *et seq*.). *See* Complaint, ECF No. 1. Plaintiffs seek a default judgment against Stuward. *See* Motion, ECF No. 30.

Following a hearing on April 3, 2014, and upon consideration of the papers submitted, the undersigned finds that (a) Plaintiffs established subject-matter and personal jurisdiction, and (b) the factors in *Eitel v. McCool* do not favor entry of default judgment against Defendant. The court denies the motion for default judgment without prejudice. Counsel may submit the information required by this order within 30 days from the date of this order.

## STATEMENT

### I. THE PLANS

The employee benefit plans are as follows: IBEW Local 595 Health & Welfare Trust Fund; IBEW Local 595 Pension Trust Fund; IBEW Local 595 Money Purchase Pension Trust Fund; IBEW Local 595 Vacation Fund; IBEW Local 595 Apprentice & Training Fund; Electrical Contractors Trust; Contract Administration Fund; and Labor Management Cooperation Fund (collectively, the "Trust Funds"). Complaint ¶ 5. They are organized pursuant to the Labor Management Relations Act ("LMRA"). *Id.* Each Trust Fund is a third-party beneficiary of the Collective Bargaining Agreement (the "CBA") described below. Complaint ¶ 10. Plaintiff Alameda County Electrical Industry Service Corporation ("EISC") is a California corporation that serves as the custodian of fringe benefits collected under the CBA and is the collection agent for the Trust Funds. Complaint ¶ 6. Plaintiffs Victor Uno and Don Campbell are the trustees of the Trust Funds and officers of EISC. *Id.* ¶ 7.

### II. THE DEFENDANT

Defendant is an electrical contractor, employed individuals represented by IBEW Local 595 to perform electrical services on jobs in Alameda County, California, and is an employer engaged in an industry or activity affecting commerce within the meaning of Sections 3(5) and 515 of ERISA, 29 U.S.C. §§ 1002(2), 1145. *Id.* ¶ 8. Defendant is obligated to make employer contributions to the Trust Funds pursuant to the CBA. *Id.*; *see* Uno Declaration Ex. D (CBA), ECF No. 30-1 at 39-40, 51-52; *see also* McClaskey Declaration, ECF No. 30-2, ¶ 2. Pursuant to written trust agreements, the Trust Funds were established for the sole and exclusive purpose of providing health and welfare

benefits, pension benefits, and other benefits to employees covered by the CBA, and to their dependents and beneficiaries. Complaint ¶ 10.

On November 5, 2007, Defendant entered into the CBA by signing the "Letter of Assent" which bound Defendant by the terms of the CBA. *See* Uno Declaration Ex. B (Letter of Assent). Under the CBA, Defendant is obligated to make monthly reports to the Trust Funds on the hours worked by employees covered by the CBA and to contribute to the Trust Funds based on those hours at rates set in the CBA. *Id.* ¶ 12. The CBA requires Defendant to make these contributions on or before the twentieth day of the month following the month in which hours were worked. *Id*.

Under the trust agreements, an employer that fails to file an accurate and complete report of the hours worked by employees under the CBA is presumed to owe the Trust Funds contributions equal to the greater of either: (1) the contributions due for the previous month, (2) the average of the contributions due for the previous three months, or (3) the average of the contributions due for the previous twelve months. *Id.* ¶ 13. In the event that Defendant fails to make full and timely contributions, he is subject to interest at the rate of 12% simple interest per annum, liquidated damages of 10% for each month that the contribution is delinquent, and collection costs, including attorney's fees. *Id.* ¶ 14.

Defendant's union-represented employees performed work covered by the CBA since at least August 1, 2008. *Id.* ¶ 15. The Trust Funds' accounting firm Miller, Kaplan, Arase & Co., LLP performed an audit of Defendant's payroll records for 2008 and 2009. *Id.* ¶ 16. The audit showed that Defendant underreported and underpaid contributions due for work performed in August to November 2008 and August to November 2009. *Id.* ¶ 16. Defendant refused to make full and timely payments for work performed from August 1, 2008 to the present, including the period covered by the audit. *Id.* ¶ 17.

**III. THE DAMAGES THAT PLAINTIFFS SEEK IN THIS CASE**

Plaintiffs' November 23, 2011 complaint seeks the following

18. Under the terms of the trust agreements, and based on the auditor's report and Defendant's benefit contribution reports, Defendant owes TRUST FUNDS the following amounts:

a. $36,230.06 in unpaid contributions, liquidated damages and interest through November 20, 2011 for work performed between August 1, 2008 and May 31, 2011;

b. Additional interest on the delinquent amounts at the rate of 12% simple interest per annum from August 21, 2011, until Defendant's obligations are paid in full, according to proof.

c. Additional contributions for all hours worked by employees covered by the CBA from June 1, 2011 until Defendant's obligations are paid in full, plus interest and liquidated damages on all contributions not timely paid, according to proof;

d. Costs of suit and reasonable attorneys' fees, according to proof.

*See* Complaint, ECF No. 1, ¶ 18. Plaintiffs now seek the following damages:

6. Plaintiff seeks judgment against Defendant in the amount of $338,742.38. This amount is comprised of:

a. $257,095.44 in delinquent contributions for work performed from May 2011 through January 2014;

b. $42,414.12 in interest through March 20, 2014;

c. $24,607.18 in liquidated damages

d. $4,025.64 in costs of suit; and

e. $10,600 in attorneys' fees.

Motion, ECF No. 30 at 6; McClaskey Decl. ¶ 7.

To support the damages calculations, Plaintiffs submitted declarations and records. Defendant Stuward d/b/a Digital Electrical Enterprises "reported hours worked by its employees under the CBA for work [for] months August 2008 to May 2011, inclusive, but failed to make full and timely payments of the contributions owed." McClaskey Decl. ¶ 6, ECF No. 30-2 at 3. "Defendant failed to submit a report of the hours worked by its employees for the work months of June 2011 to January 2014, inclusive. The contributions Defendant owes for this period, along with the liquidated damages and interest applied to this amount" is set forth in a chart that totals $324,116.74 (which is the amount reflected above except that it does not include the attorney's fees of $10,600 or costs of $4,025.64) and "was prepared at my direction on February 26, 2014. *Id.* ¶¶ 6-7.

As set forth above, the complaint sought "$36,230.06 in unpaid contributions, liquidated damages and interest through November 20, 2011 for work performed between August 1, 2008 and May 31, 2011." *See* Complaint, ECF No. 1, ¶ 18. The complaint does not break down these amounts. As of the work month ending in May 2011, which in turn has a due date of June 20, 2011, the total due was $19,574.99 (including interest and the 10% liquidated damages) with a "payment

applied" effective April 3, 2012 of $16,487.55 (which was applied as of September 2010), leaving a balance due of $3,087.44. *See* Ex. 4 to McClaskey Decl., ECF No. 30-2 at 104. At the hearing, counsel explained that this figure was attributable to a bond.

Exhibit 4 reflects that no reports were received from Defendant after May 2011, which is consistent with the complaint's allegations that Defendant reported work until May 2011 and then stopped. *See* Complaint, ECF No. 1, ¶ 18; Ex. 4 to McClaskey Decl., ECF No. 30-2 at 104. Exhibit 4 thus "[e]stimate[s] amounts for 6/11 - 1/14." Ex. 4, ECF No. 30-2 at 104. To reach the total due as of January 2014 (due on February 20, 2014 and past due on March 20, 2014), Mr. McClaskey begins with the balance due of $3,087.44 due as of May 2011. *Id.* He puts that amount in the "Fringes" column and then applies an interest charge of $723.16 listed in the "12% Interest" category. *Id.* That appears to be an extra double charge because he already applied $670.80 in the "12% Interest" category for May 2011. *See id.* (Counsel can explain this in the supplemental submission.) He then assumes monthly fringe benefits of $7,937.75, monthly 1% interest of $79.38, and a monthly 10% liquidated damages of $793.78, which are the dollar amounts in each category for May 2011. *Id.* (As to the "1% Interest," it is not clear why that is being assessed, and that should be explained in the supplemental submission.) He then assume these amounts for each month from June 2011 to January 2014. *Id.* For each month, his calculations also apply a "12% Interest" assessment. That "12% Interest" is $2,451.80 for June 2011, and then it declines steadily through the time period, resulting in a $72.80 "12% Interest" amount for the period ending January 2014. *See id.*

Thus, for each month from June 2011 to January 2014, Mr. McClaskey assumes the following amounts: $7,937.75, $79.38, $793.78 and the varying "12% Interest." Those total $324,116.74 for unpaid contributions, interest, and liquidated damages. *Id.*; McClaskey Decl., ECF No. 30-2, ¶ 7.

The records also show the "payment applied" for the contribution period for September 2010 of $16,487.55, and a zero balance in October 2010 (the next contribution period). Ex. 4 to McClaskey Decl., ECF No. 30-2 at 104. The total fringe benefits assessed from November 2010 to May 2011 are $5,258.23 for November 2010, $1,924.30 for April 2011, and $7,937.75 for May 2011, all apparently based on Defendant's reports. *See id.* That amount is $15,120.28, which is $1,367.22



UNITED STATES DISTRICT COURT
For the Northern District of California

less than the $16,487.55 "Payment Applied" in September 2010 that was carried forward after the October 2010 balance and applied in May 2011. *See id.* But for the contribution months November 2010, April 2011, and May 2011, there are assessments in the following categories: 1% interest ($52.58, $19.24, and $79.38 for a total of $151.20) , 12% interest ($755.08, $181.44, and $670.80 for a total of $1,607.32), and 10% liquidated damages ($525.82, $192.43, and $793.78 for a total of $1,512.03). *See id.* The charges for interest and liquidated damages total $3,270.55.

**IV. PLAINTIFFS' ATTEMPTS TO SERVE DEFENDANTS**

Plaintiffs tried to serve Defendants in 2011 and 2012 but were unable to do so. The court's 4/16/12 Order summarizes these attempts:

- On December 7, 2011, the process servers hired by Plaintiffs' counsel discovered that Stuwart's listed business address was vacant.
- Service was also attempted at 4376 Santa Rita Rd., El Sobrante, CA 94803, the most recent residential address Plaintiffs could find for Stuward.
- On December 30, 2011 the servers spoke with the current resident of this address, Paul Smithers, who said he had lived there for two years and had not heard of Stuwart.
- Plaintiffs discovered two other possible addresses for Stuward through a skip trace, 9929 Longfellow Ave, Oakland, CA 94603 and 4408 Market St. Suite G, Oakland, CA 94601.
- Servers attempted service at the Longfellow address on January 25, 2012 and discovered that this was a vacant residence.
- Servers attempted service on the Market St. address on January 26, 2012 and was told by landlord Leslie Golden that Stuward had been evicted six months previously.
- On February 18, 2012 the U.S. Postal Service reported to Plaintiffs' servers that Stuward had not been at the Longfellow address in over a year and there was no forwarding order on file.

ECF No. 11 at 2. Based on its own Internet research, the court refused on this record to grant Plaintiffs' request to serve Defendant by publication and suggested additional steps. *See id.* at 3. Thereafter, Defendants found four additional addresses and confirmed by April 16, 2012 through their process servers that Stuward "has no presence at any of these addresses." CMC Statement, ECF No. 12 at 2. They identified five more addresses and attempted to serve Stuward at least two of them. *See* 7/30/12 Order, ECF No. 15 at 2. The court located three more addresses. *See id.* at 2. The court again denied the motion to serve by publication without prejudice. *See id.* at 3.

Plaintiffs then filed supplemental declarations identifying their efforts to locate Stuward through

internet searches, skip tracing, and a post office inquiry. *See* 1/7/13 Order, ECF No. 20 at 4 (detailing efforts). They identified 12 possible addresses for Stuward, attempted to serve him at each address, and were unsuccessful. *See id.* They made repeated efforts to locate Stuward at the many addresses they found and found evidence suggesting that Stuward would not be located at the others. *Id.* Based on Plaintiffs' efforts, the court found that Plaintiffs exercised reasonable diligence and granted their request to serve Stuward by publication. *Id.* The court's prior order summarized and applied the legal standard that governed its decision to allow service by publication:

> Under Federal Rule of Civil Procedure 4(e), a plaintiff may serve an individual defendant using any method permitted by the law of the state in which the district court is located or in which service is effected. Fed. R. Civ. P. 4(e)(1). Service by publication is permissible under California law where the court determines that the party to be served cannot with reasonable diligence be served in another manner. Cal. Code Civ. Proc. § 415.50(a).
>
> In determining whether a plaintiff has exercised "reasonable diligence," the court examines the affidavit required by the statute to see whether the plaintiff "took those steps a reasonable person who truly desired to give notice would have taken under the circumstances." *Donel, Inc. v. Badalian*, 87 Cal. App. 3d 327, 333 (1978). And, because of due process concerns, service by publication should be allowed "only as a last resort." *Id.* The fact that a plaintiff has taken one or a few reasonable steps does not necessarily mean that "all myriad . . . avenues" have been properly exhausted to warrant service by publication. *Id.*

*Id.* at 3-4.

Plaintiffs served Defendant by publication in (1) the Contra Costa Times on March 18, 2013, March 25, 2013, April 1, 2013, and April 8, 2013, and 4/8/2013, and (2) the San Francisco Chronicle on March 19, 2013 March 26, 2013, April 2, 2013, and April 9, 2013. See Proof of Service, ECF Nos. 22-23. These addresses are in the Bay Area, which is where his addresses generally were. *See, e.g.*, 7/30/12 Order, ECF No. 15 at 3; Tosdal Decl., ECF No. 19-2. (There also was an address in Sacramento that had someone else living there as of February 2012. *See* Tosdal Decl., ¶ 3(a) & Ex. 1. Defendant never appeared. *See generally* Docket.

## V. OTHER RELEVANT PROCEDURAL HISTORY

On August 29, 2013, following Plaintiffs' request, the Clerk of Court entered Defendant's default. *See* ECF Nos. 24-25. On September 3, 2013, Plaintiffs dismissed the Doe defendants. *See* ECF No. 26. Three months passed with no motion, and the court issued an order to show cause for failure to prosecute on December 18, 2013. *See* Order to Show Cause, ECF No. 27. Plaintiffs filed their response on December 19, 2013, and the court discharged the order to show cause. *See* ECF

UNITED STATES DISTRICT COURT
For the Northern District of California

Nos. 28-29. Plaintiffs filed their motion for default judgment. Motion for Default Judgment, ECF No. 30. The court held a hearing on April 3, 2013. *See* Minute Order, ECF No. 33.

**ANALYSIS**

**I. THE COURT HAS JURISDICTION OVER THIS MATTER AND DEFENDANT**

Before entering default judgment, a court must determine whether it has jurisdiction over defendants. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

**A. Subject-Matter Jurisdiction**

District courts have original jurisdiction to hear civil cases arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. Plaintiffs allege that Defendant is liable for failure to make benefit contributions under 29 U.S.C. § 1332(g)(2)(A), and for violating 29 U.S.C. § 1145 and the terms of the CBA. Thus, this court has subject-matter jurisdiction because both claims arise under federal law. 28 U.S.C. § 1331(a).

**B. Personal Jurisdiction**

As the party seeking to invoke this court's jurisdiction, Plaintiffs bear the burden of establishing that this court has personal jurisdiction over Defendant. *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (citing *Data Disc, Inc. v. Sys. Tech Assocs.*, 557 F.2d 1280, 1285 (9th Cir. 1977)). Here, the court may exercise personal jurisdiction over Defendant because he operated as an electrical contractor, employs individuals to perform electrical services on jobs in Alameda County, and is an employer by virtue of ERISA § 3(5), 29 U.S.C. § 1002(5). Complaint ¶ 8. Plaintiffs service Defendant by publication, which is sufficient. *See Trs. of the ILWU-PMA Pension Plan v. Coates*, No. C 11-3998 EMC, 2013 WL 556800 at *5 (N.D. Cal. Feb. 12, 2013) (finding service by publication sufficient in interpleader case resolving conflicting claims to pension benefits and granting default judgment); *IO Group, Inc. v. Atkins*, No. C 04-4819 PJH, 2005 WL 1492381, at *1 (N.D. Cal. June 12, 2005) (service by publication was sufficient to allow entry of default judgment in online copyright infringement case).

**II. *EITEL* FACTORS AND ENTRY OF DEFAULT JUDGMENT**

Under Federal Rule of Civil Procedure 55(b)(2), a plaintiff may apply to the district court for – and the court may grant – a default judgment against a defendant who has failed to plead or

UNITED STATES DISTRICT COURT
For the Northern District of California

otherwise defend an action. *See Draper v. Coombs*, 792 F.2d 915, 925 (9th Cir. 1986). Default judgments are generally disfavored because "cases should be decided on the merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). The court must consider the following factors when deciding whether to use its discretion to grant a motion for default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute about the material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Id*. at 1471-72.

**A. Merits and Sufficiency (prongs two and three of the *Eitel* test)**

After entry of default, well-pleaded allegations in the complaint regarding liability and entry of default are taken as true, except as to damages. *See Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). The court is not required to make detailed findings of fact. *Id*. Default judgment cannot exceed the amount demanded in the pleadings. Fed. R. Civ. P. 54(c).

***1. Breach of the CBAs under 29 U.S.C. § 185(a)***

29 U.S.C. § 185 permits Plaintiffs to sue for breaches of a collective bargaining agreement. Federal courts apply federal common law principles to determine the enforceability of contract provisions like liquidated damages provisions. *See Idaho Plumber & Pipefitters Health & Welfare Fund v. United Mech. Contractors, Inc.*, 875 F.2d 212, 214-18 (9th Cir. 1989). Plaintiffs' complaint sufficiently alleges a contractual obligation to make contributions and a breach of that obligation. *See* Complaint ¶¶ 2, 8, 10-18.

***2. Recovery of Unpaid Trust Fund Contributions under 29 U.S.C. §§ 1132(g)(2) and 1145***

29 U.S.C. § 1145 provides, "every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or a collectively bargained agreement shall, to the extent not inconsistent with the law, make such contributions in accordance with the terms and conditions of such plan or such agreement." Section 1145 thus creates a claim against employers who do not make timely contributions as required under a collective bargaining agreement. *See Trustees of the Screen Actors Guild-Producers Pension & Health Plans v. NYCA Inc.*, 572 F.3d 771,

774-76 (9th Cir. 2009); *Bd. of Trs. v. RBS Washington Blvd. LLC*, No. C 09-06660 WHA, 2010 WL 145097, at *2 (N.D. Cal. Jan. 8, 2010). Plaintiffs here must prove the following: (1) the plans are multiemployer plans as defined by 29 U.S.C. § 1002(37), (2) the CBAs obligated Defendant to make the disputed contributions; and (3) Defendant did not make the required contributions. 29 U.S.C. § 1145; *Bd. of Trs. of the Sheet Metal Workers Health Care Plan of Northern California v. Gevasio Envtl. Sys.*, No. C 03-4858 WHA, 2004 WL 1465719, at *2 (N.D. Cal. May 21, 2004).

Plaintiffs' complaint contains sufficient facts establishing the elements of the claim: the Trust Funds are multiemployer benefit plans within the meaning of ERISA; the CBA required Defendant to make contributions to the plans, and Defendant did not make the required contributions. *See* Complaint ¶¶ 12-21. Plaintiffs also provide evidence detailing both the contributions, liquidated damages, and interest owed. *See* McClaskey Declaration, ECF No. 30-2 at 104. If that evidence is sufficient to establish entitlement to damages (an issue discussed below), then these two *Eitel* factors weigh in favor of granting default judgment. If the evidence does not establish damages, then the factors weigh against default judgment.

**B. The Remaining *Eitel* Factors**

The remaining *Eitel* factors weigh in favor of default judgment if Plaintiffs establish entitlement to damages for unpaid contributions and weigh against default judgment if Plaintiffs do not.

***1. The Possibility of Prejudice to Plaintiffs***

If the motion is not granted, Plaintiffs have no recourse to enforce the terms of the agreement requiring Defendant to make plan contributions and pay liquidated damages and interest. *See Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

***2. The Possibility of a Dispute concerning a Material Fact***

Again, as discussed below, this turns on whether Plaintiffs established an entitlement to damages. If they do not, then disputes of fact militate against default judgment. If they do, then there is no indication that there might be a disputed issue of material fact given that the issues are straightforward: whether Defendant failed to make timely contributions as required by the CBA, and what the damages are.

***3. Excusable Neglect***

Assuming that Plaintiffs establish their entitlement to damages, nothing in the record suggests excusable neglect. As a different court observed in a case involving service by publication,"[i]t is unlikely that [Defendant's] failure to answer, and the resulting defaults entered by the [clerk], were the result of excusable neglect" where Plaintiff "effectuated service on [Defendant] via substituted service, which is a method permitted by law." *W. Reserve Life Ins. Co. of Colorado v. Canul*, No. C 11-0175 AWI, 2012 WL 844589, at *3 (E.D. Cal. Mar. 12, 2012). That being said, as discussed below, there are fact arguments about whether Defendant owed contributions or whether the assessment of liquidated damages and interest was appropriate. The issues locating Defendant suggest that he no longer is in business and does not live in the area. His answer then might be grounded in a reasonable assumption that he has no liabilities.

***4. The Sum of Money at Stake in the Action***

When the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged. *See Eitel*, 782 F.2d at 1472 (three-million-dollar judgment, considered in light of parties dispute as to material facts, supported decision not to enter default judgment); *Tragni v. Southern Elec. Inc.*, No. 09-32 JF, 2009 WL 3052635, at *5 (N.D. Cal. Sept. 22, 2009); *RBS Washington*, 2010 WL 145097, at *3 (*citing Eitel*, 782 F.2d at 1472). The amounts that Plaintiffs seek – if they can establish their entitlement to them – are relatively modest and (if awardable) are required by both the CBA and 29 U.S.C. §1132. *See Northwest Administrators, Inc. v. Albertsons, Inc.*, 104 F.3d 253, 257-58 (9th Cir. 1996). Again, assuming that Plaintiffs are owed damages, this factor does not disfavor entry of default judgment in this case.

***5. The Strong Policy in the Federal Rules that Favors Decisions on the Merits***

When determining granting a default judgment, the court must consider the strong policy of the federal courts in favoring decisions on the merits. This policy, however, is not dispositive; rather, the court still has great latitude in exercising its discretion with regards to the relative weight of the remaining *Eitel* factors. *PepsiCo*, 238 F. Supp. 2d at 1177. Despite the policy of favoring decisions on the merits, default judgment is appropriate when a defendant refuses to litigate a case. Fed. R. Civ. P. 55(b); *see RBS Washington*, 2010 WL 145097, at *4.

UNITED STATES DISTRICT COURT
For the Northern District of California

## III. RELIEF SOUGHT

Under the CBA and ERISA, when contributions are unpaid, Plaintiffs may recover the following: (1) unpaid contributions; (2) interest on the unpaid contributions; (3) liquidated damages; (4) reasonable attorney's fees and costs; and (5) such other legal or equitable relief the court deems appropriate. 29 U.S.C. § 1132(g)(2).

For the breach of contract claim, the district court applies federal contract law to determine whether the liquidated damages are reasonable. *See Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mech. Contractors, Inc.*, 875 F.2d 212, 214-18 (9th Cir. 1989). Liquidated damages must meet two provisions: (1) the harm caused by the breach of contract must be difficult or impossible to estimate; and (2) the amount of liquidated damages must be a reasonable forecast of compensation for the harm caused. *Id.*; *United Order of American Bricklayers & Stone Masons Union No. 21 v. Thorleif Larsen & Son, Inc.*, 519 F. 2d 331, 337 (9th Cir. 1975) (upholding liquidated damages provision in collective bargaining agreement of 10 percent of unpaid contributions).

For the claim for damages under 29 U.S.C. § 1132(g)(2), Plaintiffs must prove their entitlement to relief through written declarations and fulfill the following three requirements: (1) the defendant must be delinquent in its contributions at the time the action is filed; (2) the district court must enter judgment against the defendant; and (3) the plan must provide for the damages sought. *Northwest Administrators*, 104 F.3d at 257-58; *Idaho Plumbers*, 875 F.2d at 215. If these requirements are met, an award of contributions, liquidated damages, and reasonable attorney's fees and costs is mandatory. *Northwest Administrators*, 104 F.3d at 257-58; *RBS Washington*, 2010 WL 145097, at *3. The specific award under 29 U.S.C. § 1132(g)(2) is as follows: (A) the unpaid contributions; (B) interest on the unpaid contributions (established at the rate of 12% simple interest per annum); (C) liquidated damages of 10% of the delinquent amount as pursuant to the term of the Trust Agreements; (D) reasonable attorney's fees and costs; and (E) appropriate equitable relief. *See* 29 U.S.C. § 1132(g)(2).

### A. Unreported, Unpaid Contributions, Interest, and Liquidated Damages

Defendants' obligations under the CBA are clear and require payment of fringe benefits for

UNITED STATES DISTRICT COURT
For the Northern District of California

covered employees. *See* McClaskey Declaration ¶¶ 6-7. The CBA also requires interest at the rate of 12% per annum calculated from the day contributions are considered delinquent and liquidated damages of 10% on the assessed funds for each month that the contribution is delinquent. *Id.* ¶ 5, Ex. 1 (Trust Agreement of the IBEW Local 595 Pension Trust), ECF No. 30-2 at 23-24.[2]

In addition, pursuant to 29 U.S.C. § 1132(g)(2)(C), Plaintiffs are entitled to an additional award of liquidated damages, not exceeding 10% of the unpaid contribution levied for delinquent payments, if the following requirements are satisfied: (1) the employer is delinquent at the time the action is filed; (2) the district court enters a judgment against the employer; and (3) the plan provides for such an award. *Plumbers & Pipefitters Nat'l Pension Fund v. Eldridge*, 232 F. App'x 680, 683 (9th Cir. 2007).

The issues thus are not about what the plan requires but what damages can be awarded here. In the complaint, Plaintiffs sought only "$36,230.06 in unpaid contributions, liquidated damages and interest through November 20, 2011 for work performed between August 1, 2008 and May 31, 2011." Complaint, ECF No. 1, ¶ 18. The record supports only $19,574.99 in fringe benefits, interest, and liquidated damages through May 2011 less the $16,487.455 payment for a net due of $3,087.44 as of May 2011. McClasky Decl. Ex. 4, ECF No. 30-2 at 104. The complaint does ask for "additional interest on the delinquent amounts at the rate of 12% simple interest from August 21, 2011, until Defendant's obligations are paid in full." Complaint, ECF No. 1, ¶ 18. That means that the complaint gives notice that 12% simple interest accrues on the net amount due, which – from the records – is at best the $3,087.44 actually due as of May 2011. Another relevant issue is that the

[2] The court finds specifically that both conditions under *Idaho Plumbers* exist for enforcing the liquidated damage provision: (1) the harm caused by the breach of contract is difficult or impossible to estimate, and (2) the amount of liquidated damages is a reasonable forecast of compensation for the harm caused. *See Idaho Plumbers*, 875 F.2d at 214-18. As to the first factor, costs are spread across different trusts for different benefits like health, pension, vacation and other benefits. Damage to labor-management harmony also results when an employer fails to comply with long-negotiated provisions in collective bargaining agreements. *See United Order of American Bricklayers*, 519 F.2d at 332 (finding these facts persuasive). As to the second factor, the court concludes that the liquidated damages provision of the trust agreement is reasonable considering that liquidated damages can be provided under the plan so long as they are not in excess of 20%. 29 U.S.C. § 1132(g)(2)(C)(ii).

complaint gives notice that Plaintiffs seek "[a]dditional contributions for all hours worked by all employees covered by the CBA from June 1, 2011, until Defendant's obligations are paid in full, plus interest and liquidated damages on contributions not timely paid, according to proof." *Id.* It also gives notice that Plaintiffs seek their attorney's fees and costs of the lawsuit. *Id.*

In assessing the *Eitel* factors, all factual allegations in the complaint are taken as true, except those with regard to damages. *See Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). Allegations of damage are not deemed true simply because of the defendant's default. Some proof of the amount is required. *See Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977). And "even a defaulting party is entitled to have its opponent produce some evidence to support an award of damages." *LG Elecs., Inc. v. Advance Creative Computer*, 212 F. Supp. 2d 1171, 1178 (N.D. Cal. 2002).

Furthermore, pursuant to Federal Rule of Civil Procedure 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). The purpose of this rule is to ensure that a defendant is put on notice of the damages being sought against it so that he may make a calculated decision as to whether or not it is in his best interest to answer. *In re Ferrell*, 539 F.3d 1186, 1192-93 (9th Cir. 2008); *Board of Trustees of the Sheet Metal Workers Local 104 Health Care Plan v. Total Air Balance Co.*, No. 08-2038 SC, 2009 WL 1704677, at *3-5 (N.D. Cal. June 17, 2009).

The question is, what is the result of the application of the standard – that ordinarily damages must be pleaded in the complaint – to this case. As this court has said previously, the point is notice. *See Alameda County Electrical Indus. Serv. Corp. v. Banister Electric, Inc.*, No. C 11-04126 LB, ECF No. 23, at 2. Complaints can give notice that plaintiffs are seeking post-filing contributions. *See id.* at 2-3 (recognizing that some take a more literal view and limit the relief to that specified in the complaint). And this complaint did specify Plaintiffs' intent to seek contributions after May 2011, which was the last month that Defendant reported hours. *See* Complaint, ECF No. 1, ¶ 18; McClaskey Decl., ECF No. 30-2, ¶ 4. That being said, despite Plaintiffs' best efforts, they could not locate Defendant after they filed the lawsuit, which suggests that Defendant went out of business and perhaps left the area entirely. By contrast, other cases often have some evidence of ongoing work.

Given these facts, it is hard to conclude that a defendant with notice of the lawsuit (which can be presumed through publication) would understand that he risked a hypothetical judgment ten times that contemplated by the complaint. Put another way, when a defendant is served directly and fails to show up, notice is there, and the risks are known. But in the context of service by publication (used only because a defendant cannot be served), the discretionary application of the *Eite*l factors does not necessarily militate in favor of imposing ongoing monthly contributions for someone who clearly is not working anymore.

Another equity concern is that Plaintiffs were able to apply the bond of $16,487.55. Defendant reported fringe contributions through May 2011 of only $15,120.28. *See* Ex. 4 to McClaskey Decl., ECF No. 30-2 at 104. At that point, the amount owed is only $3,087.44 (entirely composed of liquidated damages and interest). The efforts to locate a defendant and properly serve him by publication arguably do not militate in favor of assessing hypothetical monthly payments for a defendant who is demonstrably no longer in the area when Plaintiffs file their lawsuit.

The other issue is whether Plaintiffs have proven damages. When they filed the lawsuit in November 2011, they apparently thought that contributions through May 2011 and liquidated damages and interest totaled $36,230.06. *See* Complaint, ECF No. 1, ¶ 18. The records support only the conclusion that at best, the amount due in May 2011 was $3,087.44. *See* Ex. 4 to McClaskey Decl., ECF No. 30-2 at 104. Moreover, it is not clear from the records that it was appropriate to assess interest and liquidated damages of $3,270.55 for October 10 to May 2011 given that Stuward had posted a bond of $16,487.55 that was sufficient to cover the total fringe benefits reported and assessed of $15,120.28 for that same period. That leaves a balance of $1,367.22. Again, there is no record about what the bond is or how it is supposed to applied. One possibility, which may or may not be true, is that someone could view their bond as the equivalent of last month's rent to be applied to the outstanding balance. The court is not saying that this is true and is saying only that the issue needs to be clarified by a declaration establishing the relevant facts.

Plaintiffs provided no legal analysis at all in their declarations about the *Eitel* factors, and they provided no information at all about the calculation of damages beyond the facts recited in this order, all of which are reflected in a one-page chart that gives no basis for understanding why

Plaintiffs are entitled to the $36,230.06 that they ask for in the complaint, let alone the $338,742.48 they seek in their motion.

In sum, in different circumstances, the court has concluded that the complaint gave notice to a defendant that Plaintiffs could recover a default judgment for contributions due after the complaint's filing date. The complaint here – under the facts and circumstances of the case – does not give that notice. First, as to the unpaid contributions, interest, and liquidated damages due as of May 2011, the record establishes at best an amount due of $3,087.44 (not the $36,230.06 in the complaint). Second, as to the appropriateness of the $3,270.55 in interest and liquidated damages assessed from October 2010 to May 2011, the record is not clear that it was appropriate given the existence of a $16,487.55 bond and fringe benefits of only $15,120.28, which is $1,367.22 less than the bond. Indeed, this result would mean that Plaintiffs owe Defendant $1,367.22. Third, as to Plaintiffs' entitlement to additional contributions from June 2011 to January 2014, the complaint seeks "[a]dditional contributions for all hours worked by employees from June 1, 2011 until Defendant's obligations are paid in full, plus interest and liquidated damages on all contributions not timely paid, according to proof." *See* Complaint, ECF No. 1, ¶ 18. But nothing in the record suggests any work by Defendant during this period. Indeed, his reporting tapered off before May 2011 (at least during some months), and after May 2011, he reported no work at all. Plaintiffs' subsequent inability to find him suggests a Defendant who stopped working and left the area.

Under the circumstances, the court concludes that on this record, Plaintiffs have not established the merits of their claims in the form of their entitlement to damages. The court exercises its discretion under *Eitel* and denies default judgment with leave to supplement the fact record to establish the appropriateness and amount of a default judgment.

**B. Attorney's Fees and Costs**

Because it does not award damages, the court defers its consideration of fees and costs.

**CONCLUSION**

The court denies the motion for default judgment. Plaintiffs must submit any supplemental information within 30 days from the date of this order.

**IT IS SO ORDERED.**

Dated: April 7, 2014

LAUREL BEELER
United States Magistrate Judge